COMMONWEALTH of Pennsylvania, Appellee

v.

Elton Eugene HILL, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 11, 2011.

Filed March 1, 2012.

Jonathan W. Crisp, Harrisburg, for appellant.

Christopher J. Schmidt, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: PANELLA, DONOHUE and ALLEN, JJ.

OPINION BY DONOHUE, J.:

Appellant, Elton Eugene Hill ("Hill"), appeals the order dated December 27, 2006 denying his petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.* ("PCRA"). Hill contends that he was deprived of the effective assistance of counsel when his trial attorney, *inter alia,* failed to file a motion to suppress his post-polygraph statements, which he claims the police obtained in violation of his state and federal constitutional rights to counsel. For the reasons set forth here, we reverse the PCRA court's order and remand this case for further proceedings consistent with this decision.

In the early morning of April 8, 1998, intruders broke into the home of Mark and Kim Davis and threatened the Davis' young children with a baseball bat. One of the intruders, James Purcell ("Purcell") raped Ms. Davis. Mr. Davis was able to subdue Purcell and call the police. He left his teenage son to guard Purcell while he ran outside to pursue Hill, age 17 at the time, whom he saw sitting in a car at the bottom of his driveway. Mr. Davis followed Hill in an attempt to get a license plate number, but Hill turned his car around and attempted to run Mr. Davis off the road.

On April 21, 1998, detectives from the Derry Township Police Department, including Detective Daniel Kelly ("Detective Kelly"), arrived at Hill's parents' home where Hill resided. Detective Kelly asked Hill to meet him at the police sta-

tion. Upon his arrival at the police station, the police escorted Hill to an interrogation room to await the arrival of his parents. When they arrived and joined Hill, Detective Kelly read a form containing his *Miranda*[1] rights and gave Hill and his parents a chance to consult privately. Detective Kelly then presented them with a two-part form, the top part entitled "Constitutional Rights (Adults)" and the bottom "Waiver of Rights Miranda Warnings." Hill's parents signed the top part of the form but not the bottom part, and Hill did not sign either part. Detective Kelly testified, however, that both Hill and his parents verbally agreed to consent to an interview without the presence of an attorney. N.T., 4/25/06, at 106. At the conclusion of the interview, Detective Kelly arrested Hill, and three days later (on April 24, 1998), the Commonwealth filed a criminal information charging Hill with various criminal offenses.[2] Hill's parents then retained an attorney, Herbert Goldstein ("Attorney Goldstein").

On April 25, 1998, Hill was transported from county prison back to the police station. Attorney Goldstein met with Hill and advised him that he was about to be taken downstairs for a polygraph examination and that he should tell the truth.[3] Attorney Goldstein, a representative of the district attorney's office, and Detective Joseph Steenson ("Detective Steenson"), the polygraph examiner, met to determine and agree on the questions to be asked during the polygraph examination. At the outset of the polygraph examination, with Detective Kelly present (but without Attorney Goldstein), Detective Steenson read Hill a form that contained a recitation of his *Miranda* rights, which Hill then initialed and signed. That form, however, has apparently been lost and is not part of the certified record on appeal. Detective Kelly soon left the room and the polygraph examination proceeded to conclusion. Attorney Goldstein sat outside the examination room for some period of time, but went back to his office prior to the completion of the polygraph examination and did not return.

At the conclusion of the polygraph examination, Detective Steenson asked and received a short written statement from Hill. After a break, Detective Kelly re-entered and Detective Steenson left, at which time Detective Kelly proceeded to interrogate Hill. Detective Kelly did not ask questions from those approved by Attorney Goldstein prior to the polygraph test, but rather testified that his interrogation involved a comparison between Hill's answers during the polygraph test with those made during the prior April 21, 1998 interrogation with his parents present. *Id.* at 122. At trial, Detective Kelly testified that Hill began to cry uncontrollably, made incriminating statements, and drew diagrams of the crime scene. N.T., 11/18/98, at 283 ff., 297–98.

On November 20, 1998, a jury found Hill guilty of the above-referenced crimes. *See*

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. These charges included burglary, 18 Pa. C.S.A. § 3502, aggravated assault, 18 Pa. C.S.A. § 2702, simple assault, 18 Pa.C.S.A. § 2701, possession of an instrument of crime, 18 Pa.C.S.A. § 907, possession of a prohibited weapon, 18 Pa.C.S.A. § 908, criminal conspiracy, 18 Pa.C.S.A. § 903, and recklessly endangering another person, 18 Pa.C.S.A. § 2705.

3. Attorney Goldstein testified that he indicated to Hill that "this is a lie detector test and you take the test and you tell the truth." *Id.* at 17. Hill similarly testified that Attorney Goldstein's "exact words were 'Just tell the truth and you will be fine. Go downstairs with the officer and I'll see you later." *Id.* at 71.

footnote 2 *supra.* On March 15, 1999, the trial court sentenced Hill to serve an aggregate term of not less than 186 months and not more than 1008 months of incarceration in a state correctional institution. On March 7, 2001, this Court affirmed Hill's judgment of sentence, and on November 7, 2001, our Supreme Court denied Hill's petition for allowance of appeal.

On May 29, 2002, Hill filed a *pro se* PCRA petition. In February 2003, appointed counsel filed a petition to withdraw. On January 29, 2004, the PCRA court dismissed Hill's *pro se* PCRA petition, but after an appeal by Hill's privately retained counsel, on April 7, 2005, this Court vacated the PCRA court's dismissal of Hill's *pro se* PCRA petition.[4] On April 25, 2006 and July 27, 2006, the PCRA court held evidentiary hearings, and on December 27, 2006 the PCRA court again dismissed Hill's PCRA petition. On February 9, 2007, Hill's counsel filed a statement of matters complained of on appeal, but failed to docket an appeal. On November 15, 2010, Hill filed a new *pro se* PCRA petition seeking reinstatement of his appellate rights *nunc pro tunc.* On November 22, 2010, the PCRA court appointed Hill new counsel, and on March 23, 2011, reinstated Hill's right to file an appeal to the December 2006 dismissal of his PCRA petition.

This appeal followed, in which Hill raises two issues for our review:

1. Whether [Hill] was deprived of his constitutional right to effective assistance of counsel when his trial counsel failed to file a motion to suppress [Hill's] statement on 21 April 1998 as a violation of *Miranda* and its progeny.

2. Whether [Hill] was deprived of his constitutional right to effective assistance of counsel when his trial attorney abandoned [Hill] at a critical stage in the proceedings and when trial counsel failed to file a motion to suppress [Hill's] post-polygraph statement on 25 April 1998 as a violation of [Hill's] right to counsel under the Sixth Amendment to the United States Constitution as well as Article I Section 9 of the Pennsylvania Constitution.

Appellant's Brief at 4.

■ We will first address the second issue raised by Hill, namely his claim of ineffective assistance of counsel as a result of Attorney Goldstein's failure to file a motion to suppress Hill's post-polygraph statements, as we conclude that it is dispositive. When reviewing an order of a PCRA court, our standard of review is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Reaves,* 592 Pa. 134, 141–42, 923 A.2d 1119, 1124 (2007).

■ The test for determining the ineffectiveness of counsel is the same under both the United States and Pennsylvania Constitutions. *Commonwealth v. Williams,* 594 Pa. 366, 378, 936 A.2d 12, 19 (2007). To obtain relief on a claim of ineffective assistance of counsel, an appellant must show (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his/her course of conduct; and (3) that the ineffectiveness resulted in prejudice to the appellant. *See, e.g., Commonwealth v. Rega,* 593 Pa. 659, 696, 933 A.2d 997, 1018 (2007). The

4. Of relevance to the present appeal, in response to Hill's claim that his constitutional rights to counsel had been violated, we indicated that "the state of the record has not been developed sufficiently" and that "[Hill] must be afforded the opportunity to fully develop this claim with the assistance of counsel." *Commonwealth v. Hill,* No. 349 MDA 2004, 876 A.2d 463 (Pa.Super. April 7, 2005) (unpublished memorandum).

failure to satisfy any one of the prongs of the test for ineffective assistance of counsel requires rejection of the claim. *Commonwealth v. Pierce*, 567 Pa. 186, 203, 786 A.2d 203, 213 (2001). The burden of proving ineffectiveness rests with the appellant. *Commonwealth v. Wilson*, 543 Pa. 429, 440, 672 A.2d 293, 298 (1996). Trial counsel will not be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Pursell*, 555 Pa. 233, 255, 724 A.2d 293, 304 (1999).

■ The Fifth and Sixth Amendments to the United States Constitution both provide criminal defendants with a right to counsel, though their protections differ in various respects. Although the Fifth Amendment does not expressly set forth a right to counsel, the Supreme Court inferred such a right in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under *Miranda*, any suspect subject to custodial interrogation, regardless of whether a crime has been charged, has a right to have attorney present during questioning if the suspect so requests. *Id.* at 474, 86 S.Ct. 1602. Once a defendant invokes his or her Fifth Amendment right to counsel, all questioning must cease. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). No subsequent interrogation may take place until counsel is present, "whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).

■ The Sixth Amendment to the United States Constitution[5] states, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings. *United States v. Wade*, 388 U.S. 218, 227–28, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Interrogation is a critical stage. *Massiah v. United States*, 377 U.S. 201, 204–05, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The purpose of this right "is to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, after 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." *McNeil v. Wisconsin*, 501 U.S. 171, 177–78, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Because it does not attach until a prosecution is commenced, the Sixth Amendment right to counsel is offense-specific. *Commonwealth v. Romine*, 453 Pa.Super. 42, 682 A.2d 1296, 1299 (1996) (citing *McNeil*, 501 U.S. at 175, 111 S.Ct. 2204).

In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court explained when the Sixth Amendment right to counsel attaches:

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this

---

5. The constitutional right to counsel provided under the Sixth Amendment of the United States Constitution is coterminous with the right to counsel Article I, Section 9 of the Pennsylvania Constitution. *Commonwealth v. D'Amato*, 579 Pa. 490, 516 n. 14, 856 A.2d 806, 821 n. 14 (2004); *Commonwealth v. Arroyo*, 555 Pa. 125, 141, 723 A.2d 162, 170 (1999).

point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. *Id.* at 689–90, 92 S.Ct. 1877 (citations omitted).

As our Supreme Court has clarified, the "initiation of adversary proceedings" can be *via* "formal charge, preliminary hearing, indictment, information, or arraignment." *Commonwealth v. McCoy,* 601 Pa. 540, 546, 975 A.2d 586, 590 (2009); *see also Commonwealth v. Colavita,* 606 Pa. 1, 28, 993 A.2d 874, 890 (2010). As our Supreme Court indicated in *McCoy,* one type of "formal charge" initiating formal adversary proceedings is the filing of a criminal complaint. *McCoy,* 601 Pa. at 546, 975 A.2d at 590.

After the Sixth Amendment right to counsel attaches, it does not depend upon any further request by the defendant. *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In other words, the Sixth Amendment right to counsel is "self-effectuating," in that the accused has no obligation to assert it. *Commonwealth v. Cornelius,* 856 A.2d 62, 72–73 (Pa.Super.2004). The triggering event for attachment of the Sixth Amendment right to counsel is not a defendant's assertion of the right *via* a request for counsel, but is instead, as indicated, the initiation of the judicial proceedings. *Id.* at 73.

A defendant may waive his/her Sixth Amendment right to counsel so long as the waiver is voluntary, knowing, and intelligent. *Patterson v. Illinois,* 487 U.S. 285, 292, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). Although a defendant's *Miranda* rights have their source in the Fifth Amendment, a defendant who is admonished with the warnings set forth in *Miranda* has been sufficiently apprised of the nature of his/her Sixth Amendment rights, and thus a waiver of his/her *Miranda*

rights may constitute a waiver of both the Fifth and Sixth Amendment rights to counsel. *Id.* at 296, 108 S.Ct. 2389; *see also Montejo v. Louisiana,* 556 U.S. 778, 129 S.Ct. 2079, 2085, 173 L.Ed.2d 955 (2009).

The determination whether an accused has knowingly and voluntarily waived his constitutional rights depends on the facts of each particular case. *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). These circumstances include the background, experience, and conduct of the accused. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *overruled in part on other grounds, Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The government has the burden to prove, by a preponderance of the evidence, that the waiver was "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and was "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Winther,* 2011 WL 5837083, at *4 (E.D.Pa. November 18, 2011). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude" that the constitutional rights to counsel have been waived. *Moran,* 475 U.S. at 421, 106 S.Ct. 1135 (quoting *Fare,* 442 U.S. at 725, 99 S.Ct. 2560). With respect to constitutional rights, "courts should indulge every reasonable presumption against waiver." *Brewer,* 430 U.S. at 404, 97 S.Ct. 1232 (quoting *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019).

In the present case, Hill's Sixth Amendment right to counsel attached on April 24, 1998, the day before the polygraph examination in question, when the Commonwealth filed its initial criminal complaint against him. When Hill waived his *Miranda* rights at the initiation of the polygraph examination, pursuant to *Patterson* and *Montejo* he clearly also waived his Sixth Amendment right to counsel for purposes of the polygraph examination. The issue presented here, however, is the *scope* of that waiver—did Hill waive his right to counsel only for purposes of the polygraph examination, or with respect to any interrogation on that day, including Detective Kelly's post-polygraph interrogation.[6]

The United States Supreme Court addressed this issue in its 1982 decision in *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (*per curiam*).[7] In *Wyrick*, the Supreme Court reversed a decision of the Eighth Circuit Court of Appeals that effectively established a bright line rule that defendants must always be re-advised of their *Miranda* rights before a post-polygraph interrogation commences. *Id.* at 47, 103 S.Ct. 394.

In *Wyrick*, the defendant requested the polygraph examination, the post-polygraph interview was conducted by the same person who had conducted the polygraph (after he had merely switched off the polygraph machine), and the written waiver he signed included language much broader than typically contained in a standard *Miranda* waiver. *Id.* at 43–47, 103 S.Ct. 394. Specifically, in addition to the standard *Miranda* warnings, the waiver form also advised the defendant as follows: "If you are now going to discuss the offense under investigation, which is rape, with or without a lawyer present, you have a right to stop answering questions at any time or speak to a lawyer before answering further, even if you sign a waiver certificate." *Id.* at 44, 103 S.Ct. 394.

In its ruling, the Supreme Court reversed the decision of the Eighth Circuit, which found that the evidence showed that Fields had waived his right to have counsel present during the polygraph examination, but had not knowingly and intelligently waived his right to counsel for post-test examination. *Id.* at 46, 103 S.Ct. 394. The Supreme Court disagreed with the

---

**6.** We note that the cases cited by the Dissent do not address this issue. In *Commonwealth v. Smith*, 317 Pa.Super. 118, 463 A.2d 1113 (1983), we addressed the admissibility of a confession given in a *pre-polygraph* interview. *Id.* at 1114–15. In *Smith*, the defendant confessed immediately after he had waived his *Miranda* rights and before the polygraph examination had even begun, and thus the issue of whether the scope of a *Miranda* waiver extended to post-polygraph examinations was not before the Court.

In *Commonwealth v. Schneider*, 386 Pa.Super. 202, 562 A.2d 868 (1989), we addressed the issue of "the effect of a polygraph test, if any, on the voluntariness" of an appellant's confession in a post-polygraph examination. *Id.* at 869. To this end, we examined the all of the factors considered in determining the voluntariness of a confession generally, *id.* at 870, and also reflected on whether the representations made to the defendant by the po-

lice regarding the possible use of the results of his polygraph test caused him to confess involuntarily. *Id.* at 872. Based upon the facts presented, we concluded that the trial court did not err in determining that his confession was voluntary. *Id.* at 872–73. Other than to quote from *Smith's* brief discussion of *Wyrick* (a case discussed at length herein), however, we did not address the scope of the defendant's *Miranda* waiver in that case or determine whether it extended to a post-polygraph interrogation. Accordingly, both *Smith* and *Schneider* are inapposite to the issues presented here.

**7.** Although *Wyrick* involved the issue of waiver of the defendant's Fifth Amendment right to counsel, in light of the Supreme Court's subsequent decisions in *Patterson* and *Montejo*, the decision in *Wyrick* applies equally to possible waivers of a defendant's Sixth Amendment right to counsel as well.

Eighth Circuit's suggestion that the government should have reminded the defendant of his *Miranda* rights before proceeding to any post-test questioning. *Id.* at 46–47, 103 S.Ct. 394. The Supreme Court ruled that whether Fields had waived his right to counsel at a post-test examination had to be based upon the "totality of the circumstances," and that the facts as presented demonstrated that new *Miranda* warnings were not necessary:

> The Court of Appeals stated that there was no indication that Fields or his lawyer anticipated that Fields would be asked questions after the examination. But it would have been unreasonable for Fields and his attorneys to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result. Moreover, Fields had been informed that he could stop the questioning at any time, and could request at any time that his lawyer join him. Merely disconnecting the polygraph equipment could not remove this knowledge from Fields' mind.

*Id.* at 47–48, 103 S.Ct. 394. As such, the Supreme Court described the Eighth Circuit's bright line rule requiring new Miranda warnings as illogical—since "the questions put to Fields after the examination would not have caused him to forget the rights of which he had been advised and which he had understood moments before. The rule is simply an unjustifiable restriction on reasonable policy questioning." *Id.* at 48–49, 103 S.Ct. 394.

In *United States v. Gillyard,* 726 F.2d 1426 (9th Cir.1984), the federal government argued that *Wyrick* established a *per se* rule that *Miranda* warnings are not required for a post-polygraph interview when there was a valid *Miranda* waiver prior to the polygraph examination. The Ninth Circuit Court of Appeals disagreed, noting that a *per se* approach was exactly what the Supreme Court in *Wyrick* condemned. The facts in *Gillyard* were substantially different than those in *Wyrick,* as the defendant in *Gillyard* took the polygraph examination at the suggestion of federal agents; the post-polygraph examination questioning was not performed by the polygraph examiner, but rather by two postal investigators approximately thirty minutes after the polygraph examination had concluded; and the waiver form signed by the defendant contained only the standard *Miranda* warnings, rather than more expansive language in the *Wyrick* warning which had made it clear to the defendant that he was not merely taking a polygraph examination, but was going to be asked questions about a specific offense under investigation. *Id.* at 1428–29.

Based upon these facts, the Ninth Circuit determined that "[h]ere the questioning was not merely a continuation of the polygraph examination but a change to accusatory questioning by two officers who had nothing to do with the polygraph examination." *Id.* As a result, the Ninth Circuit affirmed the district court's ruling that under the totality of the circumstances the defendant had not waived his right to counsel in connection with the post-polygraph interrogation. *Id.*

In *United States v. Johnson,* 816 F.2d 918 (3d Cir.1987), the Third Circuit Court of Appeals cited the Ninth Circuit's reasoning in *Gillyard* in a case presenting a similar factual background:

> Here, appellant did not request the examination and thus cannot be said to have 'evinced a willingness and a desire for a generalized discussion about the investigation.' *Oregon v. Bradshaw,* 462 U.S. 1039, 1046–47, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983). Appellant was also uncounseled and thus cannot be presumed to have received competent legal advice which clarified any ambiguities concerning the examination. Finally, appellant signed waiver forms which

strongly suggested that the waiver of rights was applicable only to the polygraph examination. See App. at A—226–27. Significantly, *Miranda* warnings may be selectively invoked or waived. *See Stumes v. Solem,* 752 F.2d 317 (8th Cir.1985) (suspect invoked right to counsel during polygraph examination by refusing to take exam without attorney but did not by this refusal invoke right to counsel as to the non-polygraph questioning); *United States v. Thierman,* 678 F.2d 1331 (9th Cir.1982) (suspect may selectively waive rights by responding to certain questions but not others). We are hesitant to accept the government's assertion that a young man who had no previous exposure to the criminal justice system and who had acceded to a request for submission to a specific examination without the benefit of counsel unambiguously waived all his *Miranda* rights by signing waiver forms boldly captioned 'Polygraph Examination.'

*Id.* at 921 n. 4.

In *United States v. Leon–Delfis,* 203 F.3d 103 (1st Cir.2000), the defendant signed two waiver forms prior to submitting to a polygraph examination, a standard *Miranda* waiver and a specific waiver for polygraph testing. *Id.* at 107. His attorney returned to his office, but advised that he would be available by telephone. *Id.* at 108. After the polygraph ended, the federal agent performing the examination advised the defendant that he had "flunked." *Id.* A second federal agent joined the conversation and the two threatened to press additional charges unless the defendant came clean with the truth. *Id.* After an hour of interrogation, the defendant confessed to his participation in a conspiracy. *Id.*

■ The First Circuit Court of Appeals, after reviewing the relevant law in this area (including *Wyrick, Gillyard,* and *Johnson),* identified several relevant fac-

tors to be considered "in determining whether a waiver of one's Fifth or Sixth Amendment right to counsel for purposes of a polygraph test carries over to post-polygraph interrogation:"

Those circumstances include who requested the polygraph examination; who initiated the post-polygraph questioning; whether the signed waiver clearly specifies that it applies to post-polygraph questioning or only to the polygraph test; and whether the defendant has consulted with counsel.

*Id.* at 111. Applying these factors to the facts presented, the First Circuit concluded that, under the totality of the circumstances, the defendant had not knowingly and intelligently waived his right to counsel for purposes of the post-polygraph examination:

León–Delfis was neither told that post-test questioning would occur nor signed a waiver that specifically mentioned the possibility of post-test questioning. Additionally, the FBI agents who questioned León–Delfis knew that he was actually represented by counsel; that he did not request the polygraph test but only consented to it after suggestion by the Assistant United States Attorney; and that Agent López initiated the post-polygraph conversation and questioning, not León–Delfis.... The waivers León–Delfis signed did not specifically mention the possibility of post-polygraph questioning, and Agent López failed to explain that post-polygraph questioning would occur. All these facts suggest exactly the opposite conclusion than that made by the district court: that León–Delfis' having signed two previous waivers did not mean he knowingly and intelligently waived his rights for post-polygraph questioning.

*Id.* at 111–112.

■ It does not appear that any Pennsylvania appellate court has addressed the

issue of waivers of the Sixth Amendment right to counsel in connection with post-polygraph interrogations. We note, however, that it has long been the law of this Commonwealth that although an accused may waive his/her right to counsel, such a waiver must be made knowingly and intelligently—and that to make a knowing and intelligent waiver the defendant must be aware of both the rights being waived and the risks of forfeiting them. *See, e.g., Commonwealth v. Spotz,* 610 Pa. 17, 49–51, 18 A.3d 244, 263 (2011); *Commonwealth v. Monica,* 528 Pa. 266, 272–73, 597 A.2d 600, 603 (1991). Accordingly, in the case *sub judice* we will apply the factors set forth in *Leon–Delfis*[8] to determine whether Hill waived his Sixth Amendment right to counsel in connection with the post-polygraph interrogation by Detective Steenson and Lieutenant Kelly.

■ With regard to the first factor, the PCRA court reached no finding of fact regarding who requested the polygraph examination. The record on appeal like- wise does not disclose whether the Commonwealth or Hill (or his counsel) requested it. With regard to the second factor, the PCRA court found that the police initiated the post-polygraph questioning.[9] At the conclusion of the polygraph, Detective Steenson advised Hill that he had failed— at which time Lieutenant Kelly entered the examination room and began interrogating Hill. Trial Court Opinion, 1/2/07, at 4.

With regard to whether the written waiver signed by Hill clearly specified that it applied to post-polygraph interrogation, no conclusive answer is possible because the Commonwealth has apparently lost the document and it is not contained in the record on appeal. The record does disclose, however, that both Detective Steenson and Lieutenant Kelly testified that prior to the polygraph examination, Detective Steenson read Hill a *standard* recitation of *Miranda* warnings, and neither police officer testified that Hill was specifically advised that the requested waiver also applied to post-polygraph examination.[10] Lieutenant Kelly also testi-

---

8. This Court is not bound by the federal court of appeals decision in *Leon–Delfis,* but finds its reasoning persuasive, particularly in light of its review and reliance on prior federal decisions on the same issue (including *Wyrick, Gillyard,* and *Johnson* ).

9. The significance of these first two factors is limited in light of the United States Supreme Court's decision in *Montejo.* At the time of the First Circuit's decision in *Leon–Delfis,* the Supreme Court's decision in *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), remained in effect. Under *Jackson,* once the Sixth Amendment right to counsel is invoked or attaches by operation of law, a defendant could not validly waive that right to counsel in *police initiated custodial interrogation. Jackson,* 475 U.S. at 636, 106 S.Ct. 1404. Under *Montejo,* however, the right to counsel may be validly waived in custodial interrogation after the Sixth Amendment right to counsel has attached, *even if the police initiated the interrogation. Montejo,* 129 S.Ct. at 2090. Accordingly, as a result of the *Montejo* decision, the significance of the first two factors listed in *Leon–Delfis,* has essentially been negated.

10. Lieutenant Kelly testified as follows:
    Q. What rights was he advised of?
    A. He was advised of his right to remain silent. He was advised that anything that he said could and will be used against him in trial at a later date and time. He was advised of his right to an attorney. He was advised that if he could not afford an attorney, one would be appointed. free of charge by the Commonwealth and no question would occur prior to that attorney being appointed. He was advised that at any time during questioning, if there was a question that he did not want to answer, he did not have to answer it. If at any time he wanted to cease answering questions, he could cease answering those questions.
    N.T., 4/25/06, at 105. During his testimony, Detective Steenson produced a blank form of the type he typically read to potential polygraph test-takers and had them sign before proceeding with the polygraph examination:

fied that he recalled that the waiver form signed by Hill had the word "Polygraph" inserted on it in several places. N.T., 4/25/06, at 119 ("My recollection is that there was a waiver, a signed waiver of rights. It was not used at trial because it used the word "polygraph" in it several times." and "I vaguely recall Detective Steenson having him sign, identical to these rights except the word "polygraph" is inserted in several places....). As in *Gillyard,* the post-polygraph interrogation was not performed by the polygraph examiner, but rather by a different law enforcement officer (Detective Kelly) after the polygraph examination had concluded. *Gillyard,* 726 F.2d at 1428.

Finally, with respect to the fourth factor, the record on appeal reflects that Hill consulted with his counsel prior to submitting to the polygraph examination, but did not consult with Attorney Goldstein again prior to the post-test interrogation. *Id.* at 14. Indeed, Attorney Goldstein left the police station and went back to his office shortly after the polygraph examination began, and did not return. *Id.* at 15. Attorney Goldstein testified that, based upon his experience as both a prosecutor and a defense attorney, he understood that a polygraph test sometimes includes both pre-polygraph and post-polygraph interviews. *Id.* at 49. Attorney Goldstein did not testify, however, that he advised Hill either of the potential for a post-polygraph interview or how he should respond in the event such an interview occurred. To the contrary, both Attorney Goldstein and Hill testified that Attorney Goldstein merely advised Hill that he was going to take a polygraph examination and that he should tell the truth. *Id.* at 17, 71 ("[H]is exact words were 'Just tell the truth and you will be fine.' "). Attorney Goldstein's advice in this regard is understandable, since he testified that he had no idea that Detective Kelly would initiate a new interrogation after the polygraph examination by Detective Steenson had been completed. *Id.* at 52.

The PCRA court's finding that Detective Kelly's post-polygraph examination interrogation was merely "part of the polygraph process" was error. Attorney Goldstein participated in drafting the questions to be asked during the polygraph examination and, in so doing, established the scope of Hill's waiver of his right to counsel during the polygraph examination. By his own admission, Detective Kelly's questions to Hill during the post-polygraph interro-

---

Q. Would you read those paragraphs to the person being examined verbatim?

A. Yes.

Q. Would you please read into the record the questions that you read in this case?

A. Yes, sir. Let me get my glasses. Constitutional rights. First paragraph. You have the right to remain silent. You do not have to talk to me or answer any of my questions. Do you understand this. Paragraph 2. If you do talk to me, anything you say can be used against you in a court of law. Do you understand this. Paragraph 3. You have a right to an attorney present to speak with before and during questioning, if you so desire. Do you understand this. Paragraph 4. If you cannot afford an attorney, the court will appoint one to you at no cost, public defender. Do you understand this.

Next paragraph. You can decide at any time not to answer any questions or make any statements. Do you understand this. And final paragraph. Having been read and fully understanding these rights, do you consent to talk without the presence of any attorney, and will you answer my questions. Yes or no.

\* \* \*

Q. Did you receive a yes or no response to each of these paragraph questions from Defendant Hill in this case?

A. I read each one to him and received a response of yes.

N.T., 7/27/06, at 11–13.

gation were not among those drafted and/or approved by Attorney Goldstein. N.T., 4/25/06, at 121–22. In advising Hill to go downstairs with Detective Steenson to take the polygraph examination and to tell the truth while doing so, Attorney Goldstein's clear message to Hill was that it was acceptable to answer the polygraph questions without his lawyer present—in part because his lawyer had approved the questions to be asked.

Based upon our review of the record on appeal, we cannot agree with the PCRA court's finding that Hill waived his Sixth Amendment right to counsel for purposes of the post-polygraph interrogation. Hill was a juvenile with no prior criminal record (juvenile or adult), N.T., 3/15/99, at 15, and no evidence of record shows that Hill had been advised (by either Attorney Goldstein, Detective Steenson, or Lieutenant Kelly) that post-polygraph questioning would occur, or that his oral and/or signed waiver of his *Miranda* rights extended in scope beyond the polygraph examination itself. Moreover, there is no evidence of record that the missing written waiver Hill signed specifically mentioned the possibility of post-polygraph questioning. To the contrary, the testimony of Detective Steenson and Lieutenant Kelly indicated that Hill received a standard recitation of *Miranda* warnings, with no reference to post-polygraph questioning.

The scope of Hill's *Miranda* waiver prior to the polygraph examination must be based upon what Hill understood at the time he signed the written waiver of rights form. For Hill to have knowingly and intelligently waived his right to counsel during a post-polygraph interrogation, it was essential both that he was aware that he was waiving such a right and that he understood the risks associated with its forfeiture. In our view, the record on appeal here contains no evidence that Hill knew that post-polygraph questioning would occur, or that by waiving his right to counsel for the purpose of taking a polygraph examination, he was likewise waiving his right to counsel during a post-polygraph interrogation. As a result, on the record presented, the Commonwealth failed to satisfy its burden of proof that Hill knowingly and intelligently waived his Sixth Amendment right to counsel.

■ For these reasons, Hill's claim that Attorney Goldstein was ineffective for failing to file a motion to suppress Hill's post-polygraph statement has merit. We likewise conclude that Attorney Goldstein had no reasonable basis for his actions, and that his failure to suppress Hill's statement was highly prejudicial. In this regard, the PCRA court found Hill's statements during the post-polygraph interrogation, when introduced by Lieutenant Kelly at trial, were incriminating. Trial Court Opinion, 1/2/07, at 4 (finding number 12). Echoing this position, at the conclusion of the PCRA evidentiary hearings, counsel for the Commonwealth conceded that the scope of Hill's waiver of his constitutional right to counsel was the only genuine issue for the PCRA court's resolution, since without Hill's post-polygraph incriminating statement to Lieutenant Kelly "we are—we are basically out of court. [Hill] would be entitled to a new trial which perhaps we couldn't even give him." N.T., 7/27/06, at 49.

For these reasons, we conclude that the PCRA court erred in dismissing Hill's PCRA petition. We reverse the PCRA court's order and remand this case for further proceedings consistent with this decision. Jurisdiction relinquished.

PANELLA, J. files a Dissenting Opinion.

DISSENTING OPINION BY
PANELLA, J.:

Because I find the majority's conclusion that the post-polygraph interview consti-

tuted a "new interrogation," which exceeded the scope of the original *Miranda* warnings, to be in error, I am compelled to dissent. Rather than reverse, I would affirm the decision of the PCRA court, which found Hill's counsel was not ineffective for failing to file a motion to suppress Hill's post-polygraph statement.

It is well settled in Pennsylvania that a defendant's statement or confession given after having been advised that the defendant had failed a polygraph test is admissible in evidence. *See Commonwealth v. Schneider*, 386 Pa.Super. 202, 562 A.2d 868 (1989), *aff'd*, 525 Pa. 598, 575 A.2d 564 (1990). Established case law has been consistently applied by the courts of our state and the federal courts whenever a polygraph has been used as an investigatory technique:

> "It has long been the rule in this Commonwealth that a statement given after being advised that one has failed a lie detector may be admitted into evidence." *Commonwealth v. Watts*, 319 Pa.Super. 179, 184, 465 A.2d 1288, 1291 (1983), *aff'd*, 507 Pa. 193, 489 A.2d 747 (1985). See: *Commonwealth v. Jones*, 341 Pa. 541, 19 A.2d 389 (1941); *Commonwealth v. Hipple*, 333 Pa. 33, 3 A.2d 353 (1939). See also: *Commonwealth v. Hughes*, 521 Pa. 423, 443 n. 8, 555 A.2d 1264, 1274 n. 8 (1989). See generally: Annot., Admissibility in Evidence of Confession Made by Accused in Anticipation of, During, or Following Polygraph Examination, 89 A.L.R.3d 230 (1979). In *Commonwealth v. Smith*, 317 Pa.Super. 118, 463 A.2d 1113 (1983), the Superior Court said:

> The polygraph has been acknowledged by the courts of this Commonwealth to be a valuable tool in the investigative process. See: *Commonwealth v. Hernandez*, 498 Pa. 405, 415, 446 A.2d 1268, 1273 (1982); *Commonwealth v. Smith*, 487 Pa. 626, 631, 410 A.2d 787, 790 (1980); *Commonwealth v. Blagman*, 458 Pa. 431, 435–436, 326 A.2d 296, 298–299 (1974). Its use does not per se render a confession involuntary. *Commonwealth v. Jones*, 341 Pa. 541, 548, 19 A.2d 389, 393 (1941); *Commonwealth v. Hipple*, 333 Pa. 33, 39, 3 A.2d 353, 355–356 (1939). See: *Thompson v. Cox*, 352 F.2d 488 (10th Cir.1965); *United States v. McDevitt*, 328 F.2d 282 (6th Cir.1964).

*Schneider*, 562 A.2d at 870–871. Furthermore, a confession is not involuntary merely because it was made in anticipation of, during, or following a polygraph examination. *Commonwealth v. Smith*, 317 Pa.Super. 118, 463 A.2d 1113, 1115 (1983).

The majority cogently begins its analysis with the United Supreme Court's decision in *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (*per curiam* ), in which the Supreme Court ruled that the question of whether the defendant, Fields had waived his right to counsel at a post-polygraph examination had to be based upon the "totality of the circumstances." In *Wyrick*, the Supreme Court ultimately decided that, despite the fact that the polygraph examination had been discontinued and Fields was asked to explain the test's unfavorable results, new *Miranda* warnings prior to Field's post-polygraph examination were unnecessary. 459 U.S. at 47–48, 103 S.Ct. 394. Notably, the Supreme Court stressed that although the Appeals Court stated that there was no indication either Fields or his attorney anticipated that Fields would be asked questions following the examination, "it would have been unreasonable for *Fields and his attorneys* to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result." *Id.*, at 47, 103 S.Ct. 394 (emphasis added).

Despite this recognition, and the PCRA court's finding that the pre-polygraph and

post-polygraph interviews were part of the entire polygraph process, *see* Order, 12/27/06, at ¶ 17, Hill argues that the post-polygraph examination somehow constituted a "new interrogation" of which Attorney Goldstein was unaware and thus exceeded the scope of his waiver of counsel pursuant to the *Miranda* warnings given prior to the polygraph examination. I cannot agree with this proposition, especially in light of Attorney Goldstein's acknowledgment that it is "always the case" that a post-polygraph interview is conducted in which the results are discussed with the person interviewed. *See* N.T., 4/25/06 at 50.

Instead, I would find the oral and written *Miranda* warnings given prior to the polygraph examination sufficiently advised Hill of his rights and extended to the post-polygraph interview. I can find no fault by the investigatory actions of the police when Hill had been advised of his right to counsel, counsel was present, counsel then voluntarily left for tactical reasons which he found were beneficial to his client, and when the post-polygraph interview began, Hill made no request for his counsel to be present. The specific findings of the PCRA court, all supported in the record, included:

> (9) On Saturday, April 25, 1998, Detective Joseph Steenson of the Derry Township Police Department administered a polygraph examination to the Defendant. Prior to the examination, Detective Steenson advised the Defendant of his *Miranda* rights.
>
> (10) Immediately prior to the administration of Miranda warnings, the polygraph examination and the post-test interview, the Defendant had the opportunity to consult in person with his private counsel, Herbert Corky Goldstein, Esquire, an experienced attorney. After that consultation, the Defendant agreed to submit to questioning by the police as part of the polygraph process.
>
> (11) The Defendant executed a written waiver of his *Miranda* rights, although that written waiver cannot presently be located.
>
> (12) The Defendant submitted to a polygraph examination and was informed by Detective Steenson that he had failed the examination. Immediately after the polygraph examination, Detective Steenson and Lieutenant Daniel Kelly interviewed the Defendant. The Defendant made incriminating statements in this interview. The statements made to Detective Steenson and Lieutenant Kelly were part of the interview to which the Defendant submitted as part of the *Miranda* waiver.
>
> (13) The Defendant never invoked his right to silence or to counsel during the interview on April 25, 1998.
>
> (14) The police officers made no threats or promises to the Defendant before or during the interview.
>
> (15) Attorney Goldstein anticipated that the polygraph process would include a pre-test interview and a post-test interview, as was customary in such cases.
>
> (16) Attorney Goldstein did not insist on being present for all aspects of the polygraph process as he was aware that if he did so, the polygraph would not be administered. Attorney Goldstein determined that taking the polygraph was in his client's best interests based on the Defendant's assertion of innocence, and the facts of the case as outlined by the Defendant to his said counsel.
>
> (17) The pre-test and post-test interviews by Lieutenant Kelly and Detective Steenson were part of the polygraph process.

Order, 12/27/06, at 3–4.

In the words of Hill's current counsel: "Appellant concedes that his rights were

waived, to a point, under the 5th Amendment as pronounced in *Miranda*." Brief for Appellant, at 19. Hill's argument then struggles to stretch the meaning of the 6th Amendment right to counsel in a case where there has been an undisputed waiver combined with actions of trial counsel which were knowledgeable, voluntary, and performed for tactical reasons. I find the analysis as propounded by Hill to be unpersuasive. In the words of retired Judge Zoran Popovich: "This would truly stretch the fibers of the parchment upon which the Constitution is written in giving refuge to those not entitled to the mantle of protection afforded by such a document." *Commonwealth v. Lemanski*, 365 Pa.Super. 332, 529 A.2d 1085, 1099 (1987) (Popovich, J., concurring and dissenting).

Hill's statements were voluntarily given and were admissible at trial. Because an attempt to suppress these statements would have been meritless, counsel cannot be deemed ineffective for failing to raise this issue at trial. *See Commonwealth v. Smith*, 606 Pa. 127, 145, 995 A.2d 1143, 1153 (2010), *cert. denied*, —— U.S. ——, 131 S.Ct. 518, 178 L.Ed.2d 382 (2010) (counsel cannot be deemed ineffective for failing to raise meritless claim). Accordingly, I respectfully dissent.