J-S10039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT MICHAEL KLUNK | : | No. 1087 MDA 2021 |

Appeal from the Order Entered August 12, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003140-2019

BEFORE: MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: AUGUST 11, 2022**

The Commonwealth appeals the order granting, in part, Scott Michael Klunk's omnibus pretrial motion.[1] The order, as written, has the effect of excluding a specific component of Detective Raymond Craul's testimony at Klunk's future trial. Specifically, the court excluded a conversation between Detective Craul and Klunk wherein Klunk admitted to material elements of the primary offense in which he had been charged, drug delivery resulting in death. **See** 18 Pa.C.S.A. § 2506(a). We find no abuse of discretion in the court's determination and affirm.

The Commonwealth filed charges against Klunk stemming from the drug

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Specifically, the court granted relief responsive to the section titled "Motion *in Limine to* Exclude from Trial and/or Suppress Statements Attributed to the Defendant[.]" Omnibus Pretrial Motion, 5/19/21, at 2 (unpaginated).

overdose death of the victim, Lonnie Baer. Klunk would later file, in his omnibus pretrial motion, a hybrid motion to suppress/motion *in limine*, which sought to prevent the admission of Detective Craul's testimony. **See** Omnibus Pretrial Motion, 5/19/21, at 2 (unpaginated). Said testimony was gleaned on the same date as Klunk's waiver of his preliminary hearing. Klunk asserted that the Detective's questioning was custodial and therefore, in the absence of any **Miranda** warnings, a violation of his Fifth Amendment rights under the United States Constitution. **See Miranda v. Arizona**, 384 U.S. 436 (1966).

At the hearing on his hybrid motion, Klunk called the attorney who represented him at the waiver of his preliminary hearing, Attorney William Graff, as well as the case's affiant, and later questioner, Detective Craul.

In piecing their testimonies together, Attorney Graff, preoccupied with an off-the-record conversation with the magisterial district judge (MDJ) overseeing proceedings that day, signaled the Detective onward to speak with his client. Specifically, Klunk's attorney in conjunction with the MDJ were completing the preliminary hearing waiver paperwork, and after the ask was made, Attorney Graff stated to the Detective that he could inquire as to whatever he wanted of his client.

Although Attorney Graff did not specifically remember representing Klunk, he affirmatively stated that it was not his normal practice to allow a detective to ask questions of his clients without, at a minimum, querying as to what the content of the questioning would be. Moreover, Attorney Graff indicated that he did not discuss Klunk's right to counsel or Klunk's lack of

obligation to speak with the Detective prior to the Detective's questioning of him. Attorney Graff would maintain that authorizing the Detective to speak with his client, considering the death-related charges Klunk was facing, was just "an off-the-cuff comment. [Attorney Graff] didn't know if [the Detective] was going to say anything to [Klunk] or not. [He] was too busy talking to [the MDJ]." N.T., 8/12/21, at 6.

In his own words, the Detective would indicate that Attorney Graff, prior to the preliminary hearing waiver, conveyed that there would be no dispute that Klunk delivered heroin, but that the heroin furnished by Klunk, in fact, did not result in Baer's death.

After Attorney Graff gave the Detective access to Klunk, Klunk, outside the presence of his counsel, admitted that he acquired heroin in Philadelphia, that he sold a bag of heroin to Baer for a couple of bucks, and that Klunk consumed that same batch of heroin himself but did not get sick. Klunk was not under arrest while the two were communicating, and the Detective characterized the conversation as casual. However, the Detective, despite seeking information for investigation purposes, did not indicate to Klunk why he was asking questions or apprise Klunk of his right not to speak with him.

In addition to the already named individuals, two of the victim's family members and a stenographer were also present in the same room throughout the entirety of the previously described events.

Although, in the more recent proceedings, Klunk asserted a Fifth Amendment violation in his hybrid motion, Klunk's current counsel conceded,

at the corresponding hearing, that he was not in custody and that, therefore, **Miranda** warnings were, in all likelihood, not necessary. Counsel further noted, *inter alia*, that Klunk was free to walk into and out of waiver of preliminary hearing proceedings and that his bail was not in jeopardy.

However, reflecting on the motion *in limine* portion of the hybrid motion, Klunk also orally sought exclusion, rather than suppression, of the Detective's testimony, contending that Klunk's admissions were extremely prejudicial, outweighing their probative value. In response, the Commonwealth, *inter alia*, advanced an argument that Klunk waived his Sixth Amendment right to counsel as his attorney, standing in the same room, allowed access to him, and Klunk voluntarily spoke with the Detective.

In its ruling, the court first found that there was no Fifth Amendment basis for suppression. However, as to the motion *in limine*, the court stated its concern for whether, under the Sixth Amendment, Klunk's waiver of counsel was "knowing, voluntary, and intelligent." **Id**., at 39. The court was not convinced that Klunk effectively waived his counsel:

> [i]t's not Attorney Graff who can waive his client's right to effective counsel. It's … Klunk who has to waive it. And Attorney Graff was up talking to the MDJ and told the detective, you can go talk to my client. [Attorney Graff] didn't counsel with his client and say, based on the evidence I have in front of me, hey, you know, say this, don't say that, as far as issue areas, so I don't have a record before me that convinces this [c]ourt that at the moment, at the very short period of time, that … Klunk made a knowing, voluntary, and intelligent waiver of his right to have counsel.
>
> The statements of Klunk, if presented at trial, are certainly probative and helpful to the Commonwealth. The prejudicial effect

- 4 -

to [Klunk] is extremely high. When that is weighed against – or viewed through the prism of the fact that those statements were made, and the [c]ourt is finding that he did not knowingly, voluntarily, and intelligently waive his 6th Amendment right to counsel, I am going to exclude those statements. That is essential to preserve the fairness of this proceeding going forward.

*Id.*, at 39-40. The court also noted that because Attorney Graff did not specifically remember whether he had any type of strategy in allowing this questioning, it was highly unusual, in a vacuum, for an attorney to allow this type of interaction between a client and a police officer. In sum, the court excluded the Detective's testimony jointly predicated on Sixth Amendment and unfair prejudice grounds. The court would later summarize that "[i]n essence, Attorney Graff provided [Klunk] with no legal advice, guidance, or protection whatsoever, as he turned him over to an experienced detective for unqualified questioning in a death case." Trial Court Opinion, 10/15/21, at 8.

After the court made its ruling, the Commonwealth filed a timely notice of appeal, which, as an interlocutory appeal, contained proper certification. *See* Pa.R.A.P. 311(d) (indicating that this outcome would terminate or substantially handicap the prosecution in this case). Thereafter, the relevant parties complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. Accordingly, this appeal is ripe for review.

The Commonwealth presents three issues:

1. Did the lower court err in granting Klunk's motion to suppress based on grounds not raised within that motion?

2. Did the lower court err in finding Klunk's waiver of his Sixth Amendment right to counsel was not knowing or voluntary?

3. Did the lower court err in incorrectly applying a Sixth Amendment analysis to a claim of prejudice under the Pennsylvania Rules of Evidence?

*See* Commonwealth's Brief, at 4-5.

Preliminarily, we note the ambiguity in the record as to whether the lower court granted Klunk's motion to suppress or his motion *in limine*. As evidenced, *supra*, the Commonwealth framed its first question as predicated on it having appealed from the grant of a suppression motion. However, the court's verbiage in its order, speaking in terms of exclusion and unfair prejudice, **see** Pa.R.E. 403 (allowing for the exclusion of relevant evidence if there is a danger of unfair prejudice), falls more squarely within the dictates of a motion *in limine*. In either case, "the Commonwealth may appeal a pre-trial ruling on a motion *in limine* which excludes Commonwealth evidence in the same manner that it may appeal an adverse ruling on a suppression motion[.]" **Commonwealth v. Boczkowski**, 846 A.2d 75, 87 (Pa. 2004).

Our Supreme Court has stated: "[t]here is no essential difference between suppression rulings and rulings on motions *in limine* to admit or exclude evidence. In both cases, a pretrial ruling is handed down which admits or excludes evidence at trial[.]" **Commonwealth v. Gordon**, 673 A.2d 866, 868 (Pa. 1996). "That suppression motions are always of constitutional dimension and motions *in limine* are only sometimes of constitutional dimension is of no import[.]" **Id**.

Despite the court utilizing, predominantly, a motion *in limine* analysis, we affirm its decision as if it were purely a suppression issue being decided.

- 6 -

*See Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3 (Pa. Super. 2010) ("It is well-settled that this Court may affirm on any basis."). If we were performing a motion *in limine* review, the exclusion of such evidence would be at the sound discretion of the trial court and subject to an abuse of discretion standard. *See Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014). However, in the context of a Commonwealth appeal from a suppression order:

> [the appellate court] follow[s] a clearly defined standard of review and consider[s] only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of facts bind an appellate court if the record supports these findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Deck*, 954 A.2d 603, 606 (Pa. Super. 2008) (citation omitted).

The Commonwealth avers that the lower court "abused its discretion where it *sua sponte* granted [Klunk's] motion to suppress on grounds not within [his] motion." Commonwealth's Brief, at 21. After it became clear that there was no Fifth Amendment violation present in this case, the court's conclusion that Klunk's Sixth Amendment right to counsel had been violated was improper because the court "may only rule on allegations specifically raised in a [d]efendant's omnibus pretrial motion." *Id*., at 22.

While we agree with the Commonwealth that a suppression motion "shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof," Pa.R.Crim.P. 581(D), the cases cited by the Commonwealth in support of its argument all feature a concomitant lack of consideration of the allegedly unasserted issue at the corresponding suppression hearing. *See, e.g.*, ***Commonwealth v. Whiting***, 767 A.2d 1083, 1087 (Pa. Super. 2001) ("Moreover, it was improper for the reason that the court never took any testimony or evidence at the suppression hearing on this issue and, therefore, could not make an informed decision."); ***Commonwealth v. Carter***, 234 A.3d 729, 733-34 (Pa. Super. 2020) (identifying that the suppression motion and subsequent hearing were wholly unrelated to the basis on which the court found suppression). Stated differently, because the Commonwealth was unaware of the precise reasons for suppression ultimately found in those cited cases, it was unable to defend itself or provide evidence in a responsive motion or at the attendant hearings.

Here, placing aside the conceptual overlap between the right to counsel contained within the Fifth and Sixth Amendments, as distinct from ***Whiting*** and ***Carter***, it was the Commonwealth that effectively "opened the door" for the court to make an informed decision predicated on Sixth Amendment grounds. When given the opportunity to respond at the hearing, the Commonwealth cited, in open court, ***Commonwealth v. Briggs***, 12 A.3d 291 (Pa. 2011), for the proposition that "defendants can voluntarily waive their

6th Amendment right to counsel, and that's what happened in this case. [Klunk] waived that right to counsel." N.T., 8/12/21, at 35. The Commonwealth continued: "Attorney Graff was standing in the room. He was right there. Detective Craul took that opportunity to speak to [Klunk], and that's what we have in this case, a statement that was made. His right to counsel was waived." *Id*. A few moments later, the Commonwealth conveyed to the court that "the 6th Amendment right to counsel attaches after … charges are brought, and it specifically talks about preliminary hearings, and at that time police can't deliberately go out and speak to people unless they waive their right to counsel, and … that's what happened in this case[.]" *Id*., at 36.

While there is no explicit mention of the Sixth Amendment in Klunk's suppression motion/motion *in limine*, Klunk argued during the hearing that "no warnings were given prior to [Detective Craul] asking questions and that [the Detective] relied upon … the flippant gestures of Attorney Graff to go ahead and talk to him[.]" *Id*., at 31. Even though Klunk expressly argued in the context of the Fifth Amendment, such averments necessarily implicated the Sixth Amendment, discussed *infra*, as demonstrated by the Commonwealth's response, which attempted to convince the court of Klunk's Sixth Amendment waiver.

Clearly, then, this case is not one in which the court made a unilateral or *sua sponte* ruling; the Commonwealth ably defended itself against a theory it thought was present in the case and further cited authority in support of its

- 9 -

position. Although perhaps inartfully suggested by Klunk, the court, having observed the full testimony of both Attorney Klunk and Detective Craul, was well-apprised of the Sixth Amendment issue that was present. In fact, it is unclear what more testimony could have been taken to give the court more information in its determination. As such, we find that despite there being no Sixth Amendment argument in Klunk's motion, it was fairly suggested by Klunk's argument at the corresponding hearing and, further, that the Commonwealth was fully cognizant of, and completely responsive to, the Sixth Amendment issue to the point where the court was able to make an informed decision.

Having found no fatal defect in the procedure employed by Klunk and the court prior to the court's suppression determination, we next must evaluate whether Klunk was, in fact, deprived of his Sixth Amendment right to counsel. We conclude that he was.

The Sixth Amendment to the United States Constitution indicates, among other things, that "[i]n all criminal prosecutions, the accused shall enjoy the right to … have the assistance of counsel for his defense." **See also** Pa. Const. Art. I, § 9 (enumerating, materially, the same right to counsel). "The right to counsel extends not only to certain summary proceedings, at trial, guilty plea hearings, sentencing, but also to every critical stage of a criminal proceeding." **Commonwealth v. Fill**, 202 A.3d 133, 138 (Pa. Super. 2019) (citations omitted); **see also Commonwealth v. Carlson**, 244 A.3d 18, 22 (Pa. Super. 2020) (stating that the Sixth Amendment right to counsel

- 10 -

attaches at the initiation of adversarial proceedings, including the filing of a criminal complaint) (citation omitted). "The essence of [a defendant's Sixth Amendment] right is the opportunity for a defendant to consult with an attorney[.]" **Carlson**, 244 A.3d at 23 (citation omitted). "Once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." **Id**. (citation omitted).

Generally, "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and … do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." **Johnson v. Zerbst**, 304 U.S. 458, 464 (1938) (footnotes and citations omitted). "After the Sixth Amendment right to counsel attaches, it does not depend upon any further request by the defendant." **Commonwealth v. Hill**, 42 A.3d 1085, 1091 (Pa. Super. 2012) (citation omitted). "In other words, the Sixth Amendment right to counsel is 'self-effectuating,' in that the accused has no obligation to assert it." **Id**. (citation omitted). By way of example, if the government is deliberately eliciting incriminating information in the absence of counsel and after the attachment of the Sixth Amendment right, absent some sort of definite waiver by a defendant, that act constitutes a constitutional violation. **See Massiah v. United States**, 377 U.S. 201, 206 (1964).

In order to waive one's Sixth Amendment right to counsel, such a waiver must be "voluntary, knowing, and intelligent." ***Hill***, 42 A.3d at 1091 (citation omitted). "The determination whether an accused has knowingly and voluntarily waived his constitutional rights depends on the facts of each particular case. These circumstances include the background, experience and conduct of the accused." ***Id***. (citations omitted). The onus is on the government to demonstrate, by a preponderance of the evidence, that a waiver was a "free and deliberate choice[.]" ***Id***. (citation omitted).

The Commonwealth does not dispute that Klunk had a Sixth Amendment right to counsel when he was questioned by the Detective. ***See*** Commonwealth's Brief, at 19. However, the Commonwealth's position is that there was no Sixth Amendment violation. Klunk's attorney was present in the same room as Klunk when Klunk's attorney waived the Detective on to speak with him. Stated differently, there was no deprivation of counsel in this instance because Klunk's attorney was mere feet away. Moreover, the Commonwealth highlights that it was not a custodial interrogation, but instead a casual conversation, so Klunk's ability to terminate the interaction at any point further shows no Sixth Amendment problem. Finally, the Commonwealth asserts that it did not engage in any coercion or trickery to get Klunk to admit to inculpatory pieces of information throughout the Detective's questioning.

In response, the court writes that the Commonwealth's position

> [u]tterly discounts Attorney Graff's testimony that he was busy chatting with the [MDJ] and that, under normal circumstances, he would have found out what subjects the detective intended to

- 12 -

delve into. Attorney Graff had not discussed [Klunk's] rights with him, nor advised [Klunk] as to his obligation, or lack thereof, to speak with the [D]etective. The conversation was described as casual. It was so casual that the [D]etective did not apprise [Klunk] of any constitutional rights or of his right to remain silent. The [D]etective did not inform [Klunk] as to the subject of the conversation. The [D]etective did not even inquire whether [Klunk] wished to talk to him before launching into questioning designed to elicit incriminating statements.

Trial Court Opinion, 10/15/21, at 14. The court concluded that Klunk was not aware of "the nature of his rights, nor of the ramification of forgoing them." *Id*., at 15. In addition, the court noted that, despite the apparent trial strategy involving Attorney Graff admitting to certain elements of the crimes with which Klunk had been charged, "the right to waive counsel belongs to [Klunk] and not to Attorney Graff." *Id*.

At the suppression/motion *in limine* hearing, the Detective told the court that there was no conversation between Klunk and Attorney Graff after the Detective asked if he could speak with Klunk. *See* N.T., 8/12/21, at 13. Without any prior qualification or any other identifying pieces of information, the Detective began to ask questions of Klunk. *See id*., at 15. The Detective did not tell Klunk that he did not have to answer his questions, nor did he give Klunk any type of constitutional warnings. *See id*., at 16. Furthermore, the Detective did not inquire as to whether Klunk wanted to speak with him. *See id*. At no point did the Detective tell Klunk that he was extracting information as part of his investigation into the victim. *See id*., at 17.

Despite Klunk's counsel being technically in the room at the time, it does not appear, from the record, that he was "present" for Sixth Amendment

- 13 -

purposes. In other words, the facts of this case compel a finding that Attorney Graff's preoccupation with the MDJ effectively denied Klunk his Sixth Amendment right to counsel: Klunk's attorney had absolutely no idea what content the Detective would discuss with his client or even what the Detective's particular purpose was in seeking that meeting.

It is true that Klunk could have waived his Sixth Amendment right at any point. *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) ("[T]he defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled."). However, beyond the mere fact that Klunk provided responses to the Detective's questions, there is no evidence to show that Klunk, in fact, knowingly or intelligently waived this right to counsel. From his own testimony, the Detective did not provide *any* context to his questioning nor did he identify what his purpose was. Moreover, Klunk's attorney intentionally or unwittingly placing his client in a position to be interrogated in his absence is immaterial to whether Klunk, himself, knowingly waived his constitutional right.

While we ascribe no malice or nefariousness to the Detective's actions, especially as he was acting with at least some level of consent from Klunk's attorney, the information gleaned from the Detective's interview was not extracted after a clear waiver of Klunk's constitutional right.[2]  Therefore, it

_____

[2] For example, although such hypotheticals are not presently before us, if the Detective had expressly identified his purpose or unambiguously asked Klunk
*(Footnote Continued Next Page)*

was not an error or an abuse of discretion for the court to find a Sixth Amendment violation, and we affirm having construed the lower court's decision through the lens of suppression.[3]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/11/2022

---

whether he wanted to proceed despite the topic being discussed, the likelihood of finding a Sixth Amendment violation would have greatly diminished.

[3] As we affirm on a basis distinct from the lower court, wholly on suppression grounds, discussion of the court's unfair prejudice finding made pursuant to Pennsylvania Rule of Evidence 403 and in the context of the Sixth Amendment is unnecessary.