476 A.2d 381

COMMONWEALTH of Pennsylvania

v.

Emanuel BROWN, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 15, 1983.

Filed April 13, 1984.

506

Robert M. Fellheimer, Doylestown, for appellant.

Thomas J. Short, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before SPAETH, President Judge, and CIRILLO and JOHNSON, JJ.

SPAETH, President Judge:

This is an appeal from a judgment of sentence for burglary, criminal trespass, and criminal conspiracy. When the trial judge refused to appoint counsel to represent appellant at trial, appellant represented himself. Appellant argues that he was denied his constitutional right to counsel.[1] We agree and therefore vacate the judgment of sentence and remand for a new trial.

On July 25, 1982, at about 2:45 a.m., police officers responding to an activated burglar alarm found appellant and his nephew in a storage room at the Blair Mill Village Mall in Montgomery County. Appellant was holding a bag of women's clothing. He was arrested and charged with burglary, criminal trespass, and criminal conspiracy. On September 27, 1982, appellant asked the Montgomery County Public Defender to represent him. The Public Defender refused, and on October 28 appellant appeared before the President Judge of the trial court without counsel. When the attorney from the Public Defender's office stated that appellant was "not qualified for a public defender", N.T. 10/28/82 at 2, the President Judge continued appellant's case to November 8, telling appellant that "you are going to have to obtain private counsel or go to trial without one",

---

1. On post-trial motions and at sentencing, the Public Defender did represent appellant, and appellant also argues that he was denied effective assistance of counsel and that his sentence was excessive. We need not address these issues.

*id.* at 2. However, on November 8 appellant again appeared without counsel. The trial judge, after questioning the attorney from the Public Defender's office and appellant, found that appellant was not eligible for court-appointed counsel, and ordered that the trial should proceed. Appellant represented himself, and was found guilty on all charges. The Public Defender did represent appellant on post-trial motions and at sentencing, and filed this appeal. Appellant asked the Public Defender to discontinue representing him, and at the request of the American Civil Liberties Union, private counsel entered his appearance on appellant's behalf, and acting *pro bono*, has briefed and argued this appeal.

When appellant first appeared before the trial court without counsel, on October 28, 1982, the following colloquy ensued:

THE COURT: Now, Mr. Brown [appellant], do you have a lawyer?

THE DEFENDANT: No, Your Honor.

THE COURT: Why is that?

THE DEFENDANT: I can't afford one. I tried the Public Defenders, but they did not—I don't have the funds to obtain private counsel.

THE COURT: You say you applied to the Public Defenders?

MR. CONVER [attorney from Public Defender's]: He's not qualified for a public defender, Your Honor.

THE COURT: Then you are going to have to obtain private counsel or go to trial without one, either one or the other. You are employed, are you not?

THE DEFENDANT: Well, yes.

THE COURT: What kind of work do you do?

THE DEFENDANT: I work nights at a club.

THE COURT: What do you do there?

THE DEFENDANT: I'm the night manager.

THE COURT: Where is that club located?

THE DEFENDANT: Northwest Philadelphia.

THE COURT: Do you have any other income aside from that?

THE DEFENDANT: No.

THE COURT: How much do you earn there?

THE DEFENDANT: About $100 a week.

THE COURT: Do you own an automobile?

THE DEFENDANT: Yeah.

THE COURT: What kind of a car do you have?

THE DEFENDANT: 1970 Cadillac.

THE COURT: Well you have no choice, Mr. Brown. You are either going to trial with a lawyer or without one, but we are not paying for one. If you can afford a lawyer then you engage counsel. Do you want some time to hire a lawyer?

THE DEFENDANT: I don't have the funds.

THE COURT: I didn't ask you that. If you want to engage a lawyer of your own, you are going to have to work some arrangements with a lawyer in regard to paying him.

THE DEFENDANT: I'll do the best I can.

N.T. 10/28/82 at 2–4.

When appellant next appeared before the trial court, on November 9, 1982, again without counsel, the trial judge asked appellant whether he wanted to go to trial without counsel. Appellant replied that he had asked Albert Becker, an attorney who had represented him before, to represent him but that Mr. Becker was not available to defend him. The trial judge replied: "Mr. Becker is not the only lawyer in the world." Appellant said: "No, he isn't, but what I'm saying, Your Honor, is that I didn't have sufficient funds to retain the services of counsel. So, consequently, what happened was, I contacted the public defender's office here in the Courthouse and they denied me. Naturally, after I was denied counsel from the public defender's office, I had to appear in court [on October 28] in front of President Judge Lowe." N.T. 11/9/82 at 4. The trial judge then asked the attorney from the Public Defend-

er's office to explain why appellant had been denied representation. The attorney explained:

First of all, he made the five hundred dollars bail in this case, Your Honor. The defendant is working, making a net of a hundred bucks a week at a nightclub.... He is also owner of a '70 Cadillac in this regard.

As is stated, he had only made one attempt to obtain private counsel, and that was Albert Becker.

Because of the bail money, which is over four hundred dollars he'd get back, the fact that he's working, and the fact he has no dependents, that hundred dollars all goes to him and not to anybody else. The rent is only a hundred and sixty dollars a month. It's the only outstanding liability we saw in this matter. And because of the car he had, he could sell that or he might have obtained a bank loan.

I know if a person is working with bail money, unless he goes to approximately four or five attorneys and shows that the fees that they have charged are way beyond his means, we will not qualify him.

N.T. 11/9/82 at 6.

Appellant explained that his mother had posted the bail, and that the day before appearing for trial he had asked another attorney to represent him but that that attorney had demanded a $4,000 retainer. The trial judge thereupon ordered that the case should proceed to trial:

THE COURT: I'm going to direct this matter proceed to trial. In my judgment, the record supports the finding that Mr. Brown does not qualify for representation by the public defender.

He is gainfully employed, apparently has been for a number of years. He owns an automobile. And in view of the fact that he was advised as of, I assume, late September that he did not qualify—

MR. WALSH [the attorney from the Public Defender's office]: That's correct Your Honor.

THE COURT: He was informed of that judgment on September 27th, 1982—

MR. WALSH: That's correct.

THE COURT: —and it's now November 9th, 1982, so he was well aware of the fact that if he was to be represented, it was his responsibility to engage counsel.

The Court notes that there are many, many young lawyers who are involved in the defense of criminal cases who would more than gladly represent the defendant at a reasonable rate of compensation, and that arrangements could be made for deferred payments and all the rest of it. It seems to me that Mr. Brown has not fully explored those possibilities. And, so, I am going to direct this matter proceed to trial.

N.T. 11/9/82 at 11–12.

■ The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. An accused unable to afford counsel has the right to have counsel appointed for him. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). This right extends to everyone charged with an offense punishable by imprisonment, *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and is binding upon the states, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In recognition of the right to counsel, the Public Defender Act, Act of Dec. 2, 1968, P.L. 1144, No. 358, 16 P.S. § 9960.1 *et seq.,* requires the Public Defender to "be responsible for furnishing legal counsel [in certain cases] to any person who, for lack of sufficient funds, is unable to obtain legal counsel. . . ." 16 P.S. § 9960.6(a). In addition, Rule 316(b) of the Rules of Criminal Procedure provides:

> In all court cases counsel shall be assigned prior to the preliminary hearing to all defendants who are without financial resources or who are otherwise unable to employ counsel.

"The public defender, after being satisfied of the person's inability to procure sufficient funds to obtain legal counsel

to represent him, shall provide such counsel." 16 P.S. § 9960.6(b).[2]

In some states there are statutory guidelines by which a defendant's ability to procure counsel is determined,[3] but in Pennsylvania the Public Defender Act provides no such guidelines, nor do the Rules of Criminal Procedure. As a result, it would seem, each county may have different guidelines, or no guidelines at all. In this regard, a nation-wide survey conducted by the National Legal Aid and Defender Association (NLADA) revealed that

> there is little uniformity among judges in the importance they attribute to various factors usually considered in the determination of eligibility. Thus the same defendant may be considered indigent in one county but ineligible in an adjacent jurisdiction simply due to judicial idiosyncrasies.

NLADA, The Other Face of Justice (1973). The American Bar Association has also commented on this lack of uniformity:

> Perhaps because statutes concerning eligibility are written in general terms, there are considerable disparities in eligibility determinations among the states and sometimes within the same state. The problem is exacerbated by the fact that in many areas of the country no principles or rules of any kind have been developed to implement broad statutory definitions of eligibility.

ABA Standards for Criminal Justice, 5–6.1 Commentary (footnote omitted).

 Pa.R.Crim.P. 317 does contain an application form to be signed by a defendant who wishes court-appointed counsel:

### Rule 317. Application Form for the Assignment of Counsel

2. The court may "for cause" appoint counsel other than the Public Defender. 16 P.S. § 9960.7.

3. *See:* Alaska Stat. § 18.85.120; Ga.Code Ann. § 17–12–10; Idaho Code § 19–854; Ky.Rev.Stat. § 31.120; Vt.Sta.Ann. title 13 § 5236; Wyo.Stat. § 7–1–112.

The applicant _____ residing at _____ shows that:

1. I am named a defendant in the above entitled criminal cause of action alleging that I did commit the crime of _____ at the _____ of _____ in the County of _____ and State of Pennsylvania, on the _____ day of _____, 19__

2. I am unable to obtain counsel to defend me in this matter for the reason that _____

_____

3. I am unable to obtain funds from anyone, including my family and associates, by way of compensation for counsel and represent that the answers to the following questions are true to the best of my information and belief:

a. Do you have any money? If so, how much?

(1) On the person

(2) In custody of the Warden

(3) In the bank

(4) At home

(5) Elsewhere

b. Do you own an automobile?

(1) Year and make

(2) Cost

(3) I owe $_____ to

(4) It is now at

c. Do you own any real estate?

d. Do you own any other property or do you have any other assets? (If answer is "yes" furnish description thereof and specify its present location):

e. Does anyone owe you money? If yes, give the person's name and address and the amount he owes you:

f. If married, what is name, age and address of your (wife) (husband)?

(1) When did you last live with your (wife) (husband)?

(2) Does your (wife) (husband) work?

(3) What is name and address of (her) (his) employer?

g. Do you have any children? (Give names, ages, and addresses.)

h. What is your home address?

i. Where did you work last?

j. What is your Social Security Number?

k. What salary or wages were you receiving?

*l.* What was the total amount of your income during the past 12 months?

m. Is there a job waiting for you? (Specify)

4. (Line out a or b, whichever does *not* apply)

a. I am presently in jail and unable to obtain bail.

b. I am presently released from jail on bail in the amount of $_____ The cost of such bail was defrayed and paid by. _____, in the sum of $_____

5. I have not previously been represented by an attorney in court except (give name of attorney, name of case in which you were represented and state whether or not your attorney was paid in this case and by whom.) WHEREFORE, petitioner prays:

That this Honorable Court assign counsel to represent (him) (her) in the above entitled criminal cause of action without fee or cost to the defendant.

---

COMMONWEALTH OF PENNSYLVANIA ⎫ SS.
COUNTY OF........................... ⎭

_____, being duly sworn according to law, upon (his) (her) oath, deposes and says:

1. I am the petitioner in the above entitled action.

2. I have read the foregoing petition and know the contents thereof and the same are true to my own knowledge, except as to matters therein stated to be alleged as to persons other than myself, as to those matters I believe it to be true.

3. This affidavit is made to inform the Court as to my status of indigency and to induce the Court to assign counsel to me as an indigent defendant for my defense against the criminal charges that have been made against me.

4. In making this affidavit I am aware that perjury is a felony and that the punishment is a fine of not more than $15,000 or imprisonment for not more than seven years or both.

---

(Signature of Defendant)

Subscribed and sworn to before me this _____ day of _____, 19___

Obviously, this form is incomplete, and it should therefore not be the exclusive means of determining a defendant's eligibility. The Public Defender Act allows the court to consider such information as may be required by the court to make a proper determination. 16 P.S. §§ 9960.6(b). Of special importance is consideration of information about the defendant's liabilities. (The form provided in Rule 317, it will have been noted, asks only whether the defendant owes any money on an automobile.)⁴ As Justice DOUGLAS said in his concurring opinion in *United States v. Kahan*, 415 U.S. 239, 244–45, 94 S.Ct. 1179, 1181–82, 39 L.Ed.2d 297 (1974):

> This Court in passing on applications to proceed in forma pauperis looks not only to what the applicant's income and/or cash position is but what his periodic liabilities are. Thus a person with an income of $600 a month has been allowed to proceed in forma pauperis where his present obligations consume his entire income. The mere fact that one has money in the bank is therefore not enough to make frivolous his claim of indigency for purposes of in forma pauperis.

In addition to considering the defendant's liabilities, the court should consider the cost of representation for the crime charged. *See:* NLADA, Standards for Defender

---

4. In some states it is required by statute that there be consideration of the defendant's liabilities. *See, e.g.:* Alaska Stat. § 18.85.120; Ga.Code Ann. § 17–12–10; Idaho Code § 19–854; Ky.Rev.Stat. § 31.120; Vt. Stat.Ann. title 13 § 5236; Wyo.Stat. § 7–1–112. *See also:* ABA Standards for Criminal Justice 5–6.1 Commentary; Model Public Defender Act, National Conference of Commissioners on Uniform State Laws § 4.

Services 2.1(c); National Advisory Commission (NAC), Criminal Justice Standards and Goals 13.2(2).

Although the form provided by Pa.R.Crim.P. 317 includes a statement regarding the defendant's ability to "obtain funds from everyone, including [the defendant's] family and associates," the ABA has disapproved of requiring such a statement: "Since an eligible individual has a constitutional right to counsel, it is obviously unfair—perhaps even unconstitutional—to deny counsel because of financial resources of relatives or friends." ABA Standards for Criminal Justice 5–6.1 Commentary and cases cited therein. *Accord:* NAC, Standard 13.2(1); NLADA, National Study Commission Recommendations 1.5(a): NLADA, Standards for Defender Services 2.1(b). *See generally,* 51 A.L.R.3d 1108 § 4. In addition, the ABA has stated that "[c]ounsel should not be denied merely because . . . bond has been or can be posted." ABA Standards for Criminal Justice 5–6.1.

> The ability to post bond is rejected as a basis for denying counsel because it requires the accused to choose between receiving legal representation and the chance to be at liberty pending trial. Since a person's freedom prior to trial often is essential to the preparation of an adequate defense, placing the defendant in this dilemma is arguably a denial of the effective assistance of counsel. ABA, Standards for Criminal Justice 5–6.1 Commentary (footnotes omitted).[5]

■ In this case, nothing in the record suggests that either the Public Defender or the trial court used any guidelines by which to determine appellant's eligibility for court-appointed counsel. If indeed there are no guidelines, it is to be regretted, for the result can only be lack of uniformity, which is to say, arbitrariness, in determining

5. Some state statutes provide that release on bail should not preclude a finding of need. *See:* Alaska Stat. § 18.85.120; Ga.Code Ann. § 17–12–10; Idaho Code § 19–854; Ky.Rev.Stat. § 31.120; Vt.Sta.Ann. title 13 § 5236; Wyo.Stat. § 7–1–112. *See also:* NAC, Standard 13.-2(3); NLADA, Standards for Defender Services 2.1(b); NLADA, National Study Commission Recommendations 1.5(a). *See generally,* 51 A.L.R.3d 1108 § 5.

eligibility. Nor does the record suggest that even the form contained in Pa.R.Crim.P. 317—imperfect as that form is—was used. Nevertheless, it is plain from the limited inquiry that was made that appellant was eligible. We have already noted what that inquiry consisted of, and have quoted most of it verbatim. At this point, therefore, we need only summarize it.

On October 28, 1982, when appellant first appeared for trial, the attorney from the Public Defender's office stated to the court that "[h]e's not qualified for a public defender" but gave no explanation of the basis for this conclusion. The court then determined by questioning appellant that appellant "work[ed] nights at a club", earned "[a]bout $100 a week," and owned a "1970 Cadillac." It is evident that this was insufficient information on which to make a determination of eligibility, for it disclosed nothing regarding appellant's liabilities.

On November 9, 1982, when appellant again appeared for trial, and was required to go to trial without counsel, the court learned very little more than it had on October 28th. The attorney for the Public Defender's office repeated the information regarding appellant's earnings and automobile, adding that appellant "made the five hundred dollars bail in this case." The attorney from the Defender then added that "[b]ecause of the bail money, which is over four hundred dollars he'd get back, the fact that he's working, and the fact that he has no dependents, that hundred dollars all goes to him and not to anybody else. The rent is only a hundred and sixty dollars a month. It's the only outstanding liability we saw in this matter. And because of the car he had, he could sell that or he might have obtained a bank loan."

We cannot understand how someone supposed to represent indigent persons could make this statement, nor how the trial court could on the basis of it have denied appellant court-appointed counsel. In the first place, the statement was wrong: as appellant stated—and his statement was uncontradicted—his mother, not he, had posted the $500

bail. Therefore, putting aside the question whether appellant's eligibility should depend on his bail status, it was his mother, not he, who would get most of the $500 back. In the second place, while the statement recited, it ignored appellant's liabilities. If one deducts appellant's monthly rent of $160 a month from his earnings of $100 per week— earnings, say, of $400 odd a month—the conclusion is that appellant had left some $60 a week, or about $10 a day, from which to buy food and clothing and to pay for his transportation. Finally, the suggestion that appellant "could sell that [his 1970 Cadillac] or he might have obtained a bank loan" strikes us as either callous or misinformed or both. How much in fact could appellant realize from selling his 12 year old Cadillac? (What sort of condition was it in?) If he did sell it, how would he get to work? And what bank would loan what amount of money to appellant, and on what security? No one on the record asked these questions, and nothing in the record answers them.

The only other justification offered by the attorney from the Defender for refusing to represent appellant was that appellant "had only made one attempt to obtain private counsel, and that was Albert Becker. . . . I know if a person is working with bail money, unless he goes to approximately four or five attorneys and shows that the fees that they have charged are way beyond his means, we will not qualify him." If this statement meant—and we are by no means sure we understand it—that with the bail money "he'd get back", appellant could retain private counsel, it ignored the fact that the bail money was not appellant's but his mother's. In addition, nothing of record suggests that private counsel would have agreed to represent appellant for so small an amount. But even if private counsel would have so agreed, it was immaterial; an accused is not to be denied court-appointed counsel because, while he cannot afford counsel, his mother can. And finally, if the statement meant that it was the Defender's practice not to represent an accused in appellant's financial

position until after the accused had unsuccessfully attempted to persuade "four or five" private attorneys to represent him, it was a confession that the Defender's practice was to seek to have others assume its responsibilities. The Public Defender Act requires the Defender—not the private bar—to "be responsible for furnishing legal counsel" to an accused "who, for lack of sufficient funds, is unable to obtain legal counsel", 16 P.S. § 9960.6(a). The trial judge should have ordered that responsibility fulfilled. Instead, by "not[ing] that there are many, many young lawyers who are involved in the defense of civil cases who would more than gladly represent the defendant at a reasonable rate of compensation, and that arrangements could be made for deferred payments and all the rest of it", the trial judge condoned the Defender's default.

It remains only to discuss the Commonwealth's argument that appellant waived his right to counsel. For this proposition, the Commonwealth relies on *Commonwealth v. Wentz*, 280 Pa.Super. 427, 421 A.2d 796 (1980).

In *Wentz*, we held

that a criminal defendant who has been duly notified of the date of his trial, and who has been advised to obtain counsel to represent him and who, nevertheless, appears in court on the scheduled date without counsel and *with no reasonable excuse* for the lack thereof and no concrete plans for the obtaining of counsel has waived his right to counsel.

*Id.*, 280 Pa.Superior Ct. at 434, 421 A2d at 800 (emphasis added).

In *Wentz*, the appellant had no reasonable excuse: his excuse for appearing without counsel was "that he was from another county and didn't know any attorneys 'around here.'" *Id.*, 280 Pa.Superior Ct. at 431, 421 A.2d at 798. But appellant's excuse could not have been more reasonable: he was unable to afford counsel. Moreover, in *Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 69–70, 202 A.2d 303, 305 (1964), the Court held that there must be "a penetrating and comprehensive examination of all the

520

circumstances under which such [waiver of the right to counsel] is tendered," quoting from *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Here, the court conducted no such examination, instead accepting the Defender's assertions that appellant was ineligible for court-appointed counsel, without either asking how appellant could afford counsel when he had only about $10 a day to feed and clothe himself, or considering how possible it really was that appellant could pay counsel from the bail money, or from the proceeds of selling the 1970 Cadillac, or from a bank loan. The argument that appellant waived his right to counsel is therefore without merit.

The judgment of sentence is vacated and the case is remanded for new trial. If appellant continues to desire court-appointed counsel, the trial court shall conduct a hearing, consistent with this opinion, to determine his eligibility for such counsel. Jurisdiction is relinquished.