2020 PA Super 290

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARK ANTHONY CARLSON | |
| Appellant | No. 1801 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 21, 2019
In the Court of Common Pleas of McKean County
Criminal Division at No.: CP-42-CR-0000202-2018

BEFORE:  SHOGAN, STABILE, and KING, JJ.

OPINION BY STABILE, J.:                    **FILED DECEMBER 21, 2020**

Appellant Mark Anthony Carlson appeals from the November 21, 2019 judgment of sentence entered in the Court of Common Pleas of McKean County ("trial court"), following his jury convictions for strangulation, aggravated assault, two counts of terroristic threats, simple assault, three counts of recklessly endangering another person ("REAP"), and harassment.[1] Upon review, we vacate Appellant's judgment of sentence and remand for further proceedings.

Following a domestic violence incident, the Pennsylvania State Police charged Appellant with, *inter alia*, the foregoing offenses on April 7, 2018.  On April 18, 2018, the McKean County Public Defender's Office ("PD's Office") began its representation of Appellant in this matter.  On April 23, 2018, Philip

---

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2702(a)(4), 2706(a)(1), 2701(a)(2), 2705, and 2709(a)(1), respectively.

Clabaugh, Esquire, Chief Public Defender, entered his appearance on behalf of Appellant.[2] With the exception of one,[3] all charges against Appellant were held for trial after a preliminary hearing.

Upon filing the information, the collapse of plea efforts, and the completion of a pretrial conference, the Commonwealth filed a notice listing this case for jury trial on November 20, 2018. Following trial continuances, on January 8, 2019, Appellant, through Attorney Clabaugh, filed a "Motion for Modification of Bail," alleging that he had been offered "employment with Asplundh Tree Services." Motion for Modification, 1/8/19, at ¶ 5. Specifically, Appellant claimed that "the salary for said position would provide a livable wage, and that he has not maintained employment for a significant period of time[.]" *Id.* at ¶ 5(a). He asserted that he could not begin employment with Asplundh so long as he was required to wear "a SCRAM monitor." *Id.* at ¶ 5(b). As a result, he requested, *inter alia*, that the trial court modify his bail conditions to order the removal of the monitor.

After additional trial continuances, on May 28, 2019, Attorney Clabaugh filed a "Motion for Leave to Withdraw Appearance" under Pa.R.Crim.P. 120(B)(2). Attorney Clabaugh averred that "[Appellant] contacted the [PD's Office] on May 20, 2019 to report a change of employment, and his recently obtained employment takes him significantly over the eligibility guidelines for

---

[2] The record indicates that, on August 6, 2018, Attorney Clabaugh filed an entry of appearance on behalf of Appellant in the trial court.

[3] A disorderly conduct charge under 18 Pa.C.S.A. § 5503(a)(1) was withdrawn.

Public Defender representation[.]" Motion to Withdraw, 5/28/19, at ¶ 4. Attorney Clabaugh further averred that the PD's Office discussed the withdrawal motion with Appellant and that Appellant's "request would be for counsel to remain his attorney through the completion of the matter[.]" *Id.* at ¶ 7. Without conducting an evidentiary hearing or further determining Appellant's representation status, on May 29, 2019, the trial court granted Attorney Clabaugh's motion to withdraw. On June 3, 2019, Attorney Clabaugh filed a "Praecipe to Withdraw Appearance."

Subsequently, trial was rescheduled for July 15, 2019. By letter dated July 2, 2019 and filed on July 10, 2019, Appellant *pro se* requested a trial continuance. He claimed that, on June 8, 2019, he was in an accident and broke his arm. Appellant indicated that he was scheduled for surgery on July 3, 2019. Of particular relevance Appellant wrote:

> I have not had legal representation since the public defender was removed from my case. All the attorney's [sic] require $5000.00 retainer fee and I have not worked long enough to save that much money. I had worked less than a month prior to the accident and I have not worked since the accident. Therefore I have not been able to hire an attorney due to financial reasons and health reasons.

Letter, 7/2/19. On July 12, 2019, the trial court granted Appellant's continuance request. On August 30, 2019, the Commonwealth filed a notice of trial, scheduling trial for September 30, 2019.

On September 4, 2019, the Commonwealth filed a "Motion for Status Conference" to determine "whether [Appellant] has counsel and is prepared

to proceed with trial on September 30, 2019." Motion, 9/4/19, at ¶ 4. The trial court scheduled a status conference for September 12, 2019. There, Appellant *pro se* submitted a letter, requesting another continuance. Appellant indicated that he still could not afford counsel.

> [I am] asking the court for another post ponement [sic] for I have not yet saved the required amount for the retainer of $5,000. With [Attorney] Clayboughs [sic] withdrawment [sic] so late in the my case and I had only been working a couple weeks before I had my accident. With the cost of living and my child support and priorities, I'm saving as much as possible for the retainer. I ask if the trial set for 9-30-19 please be set at a later date? I myself need the representation to defend my innosence [sic]. I have $1800 saved to date.

Letter, 9/11/19 (unnecessary capitalizations omitted) (emphasis added). The trial court, however, denied Appellant's continuance request.

Prior to trial, Appellant *pro se* sent another letter to the trial court, filed on September 20, 2019, requesting, once again, a continuance. Appellant noted in part:

> For I'm having another surgery on my arm that stems from my accident on June 8th 2019. They have to remove a chunk of the smaller bone in my arm and are taking a piece out of my hip to replace the piece in my arm. Therefore, I'm in need of some heal time of 8 to 12 weeks so there is no infection, and off of the pain medication.

Letter, 9/20/19. Appellant claimed that the follow-up surgery was scheduled for Friday, September 27, 2019. *Id.* The Commonwealth objected to Appellant's third *pro se* continuance request. On September 26, 2019, the trial court denied the request. The case proceeded to trial, where Appellant failed to participate in any meaningful way and remained silent. Appellant

informed the court, "I'm really not going to say anything at all. Do you know what I mean? Like without an attorney I don't want to say anything." N.T., Trial, 9/30/19, at 4-5. Following trial, the jury found Appellant guilty on all charges.

Sentencing was scheduled for November 21, 2019,[4] at which Appellant once again informed the trial court "I don't have the money to hire an attorney for sentencing." Trial Court Opinion, 1/10/20, at 6. The trial court sentenced him to an aggregate term of 33 to 66 months' incarceration. Appellant did not file any post-sentence motion. On December 2, 2019, Attorney Todd M. Mosser entered his appearance on Appellant's behalf. On the same day, Attorney Mosser filed a notice of appeal. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, asserting the trial court violated his right to counsel in various ways.

In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, wherein —for the first time and without the benefit of any evidentiary hearings but solely based on docket filings and correspondence—it rendered findings of fact. The trial court found that Appellant had obtained employment with a livable wage and had an income above the amount entitling him to

---

[4] The trial court, on Appellant's motion, continued sentencing from November 7, 2019 to November 21, 2019. The record does not contain Appellant's continuance request or the reasons underlying it.

appointment of counsel.[5]  ***See*** Trial Court Opinion, 1/10/20, at 10.  The trial court, however, noted that Appellant had expressed a desire for Attorney Clabaugh "to remain his attorney through the completion of the matter."  ***Id.*** Yet, despite Appellant's preference for appointed counsel, the trial court granted Attorney Clabaugh's motion to withdraw.   Additionally, despite Appellant's subsequent indications to the court regarding the impact of the automobile accident, the trial court determined that Appellant "was not indigent and was ineligible for appointed counsel."  ***Id.***  In so determining, the trial court seemingly dismissed the possible effects of Appellant's child support obligations and living expenses on his monthly income.  ***Id.*** at 10-11.  Finally, the trial court appeared to rationalize its refusal to appoint counsel and its denial of trial continuances on a belief that any delay in trial would take a "toll" on the victims and diminish their rights to a timely resolution of this case.[6] ***Id.*** at 11-12.  In this regard, the trial court noted that Appellant already had been granted multiple continuances.  ***Id.*** at 11.  Accordingly, the trial court concluded that Appellant was not entitled to any relief.

On appeal, Appellant presents two issues for our review.

> [I.] Did the trial court err when it denied [Appellant] his right to counsel based on a finding that he was not "indigent" because he

---

[5] Nowhere in its Rule 1925(a) opinion does the trial court render any findings on Appellant's actual monthly income or expenses.

[6] While we appreciate and recognize the impact of trial delays upon the victims, such impact simply cannot be used to deny a defendant's constitutional right to counsel.

had minor employment that allowed him to pay his living expenses and child support?

[II.] Did the trial court err when it denied [Appellant's] *pro se* continuance request so that he could somehow ascertain how to obtain counsel?

Appellant's Brief at 2.[7]

Upon review, we conclude that the trial court erred in multiple regards in its obligation to protect Appellant's right to counsel under the Sixth Amendment to the United States Constitution.[8] It is well-established that a criminal defendant has a Sixth Amendment right to counsel,[9] which attaches at "the initiation of adversary proceedings," which includes the filing of a criminal complaint. **Commonwealth v. McCoy**, 975 A.2d 586, 590 (Pa. 2009); **see Commonwealth v. Prysock**, 972 A.2d 539, 542 (Pa. Super. 2009) (citation omitted) (noting that criminal defendants have a Sixth Amendment right to counsel). An accused unable to afford counsel has the right to have counsel appointed for him. **Powell v. Alabama**, 287 U.S. 45, 53 (1932). "This right extends to everyone charged with an offense punishable by imprisonment . . . and is binding upon the states."

---

[7] We need not address Appellant's second issue based on our disposition of this appeal.

[8] Appellant does not separately raise an argument under Article I, Section 9 of the Pennsylvania Constitution.

[9] The Amendment guarantees that, "[i]n all criminal prosecutions," an accused shall enjoy the right "to have the assistance of counsel for his defense." U.S. Const. amend. VI.

*Commonwealth v. Brown*, 476 A.2d 381, 384 (Pa. Super. 1984) (citations omitted).

As our Supreme Court has explained:

The right to counsel is one of the safeguards of the Sixth Amendment deemed necessary to ensure fundamental human rights of life and liberty, and serves as one of the essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not still be done. The essence of this right is the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial. Once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings.

. . . .

The denial of the right at any stage constitutes a structural defect that must be remedied, because any such error affects the framework within which the trial proceeds.

*Kuren v. Luzerne County*, 146 A.3d 715, 732-33 (Pa. 2016) (brackets, ellipsis, citations and quotation marks omitted).

To effectuate the mandate of the Sixth Amendment right to counsel, as interpreted by the United States Supreme Court in the seminal case of *Gideon v. Wainright*, 372 U.S. 335 (1963), the Pennsylvania General Assembly enacted the Public Defender Act (the "Act"), 16 P.S. 9960.1-9960.13. The Act provides:

(a) The public defender shall be responsible for furnishing legal counsel, in the following types of cases, to any person who, *for lack of sufficient funds, is unable to obtain legal counsel*:

(1) Where a person is charged with juvenile delinquency;

(2) Critical pretrial identification procedures;

(3) Preliminary hearings;

(4) State habeas corpus proceedings;

***(5) State trials, including pretrial and posttrial motions***;

(6) Superior Court appeals;

(7) Pennsylvania Supreme Court appeals;

(8) Postconviction hearings, including proceedings at the trial and appellate levels;

(9) Criminal extradition proceedings;

(10) Probation and parole proceedings and revocation thereof;

(11) In any other situations were representation is constitutionally required.

(b) The public defender, after being satisfied of the person's inability to procure sufficient funds to obtain legal counsel to represent him, shall provide such counsel.

Every person who requests legal counsel shall sign an affidavit that he is unable to procure sufficient funds to obtain legal counsel to represent him and ***shall provide, under oath, such other information as may be required by the court, the public defender, or the Pennsylvania Rules of Criminal Procedure***.

16 P.S. § 9960.6(a), (b) (emphasis added).

Here, it is undisputed that a public defender, Attorney Clabaugh, was appointed to represent Appellant at the start of this case, consistent with Section 9960.6. Yet, more than a year after entering his appearance for Appellant, Attorney Clabaugh filed a motion to withdraw based on the apparently contested allegation that Appellant's "recently obtained employment takes him significantly over the eligibility guidelines for Public

Defender Representation." Motion to Withdraw, 5/28/19, at ¶ 4. The motion was premised on Rule 120, which provides in relevant part: "An attorney who has been retained or appointed by the court shall continue such representation through direct appeal or until granted leave to withdraw by the court pursuant to paragraph (B)." Pa.R.Crim.P. 120(A)(4). The trial court, however, without holding a hearing and over Appellant's objection, granted the motion, permitting Attorney Clabaugh to withdraw from the case.

In granting the motion, the trial court failed to comply with the requirements set forth in Pa.R.Crim.P. 120(B). Under Rule 120(B), counsel, as Attorney Clabaugh did here, may withdraw by filing a motion with the clerk of courts. Pa.R.Crim.P. 120(B)(2)(a). Rule 120(B) further requires that "[u]pon granting leave to withdraw, the court **shall** determine whether new counsel is entering an appearance, new counsel is being appointed to represent the defendant, or the defendant is proceeding without counsel." Pa.R.Crim.P. 120(B)(3) (emphasis added). The Comment to Rule 120(B) explains:

> The court must make a determination of the status of a case before permitting counsel to withdraw. Although there are many factors considered by the court in determining whether there is good cause to permit the withdrawal of counsel, when granting leave, the court should determine whether new counsel will be stepping in or the defendant is proceeding without counsel, and that the change in attorneys will not delay the proceedings or prejudice the defendant, particularly concerning time limits.

***Id.***, *cmt.*

- 10 -

Here, the trial court simply failed to comply with Rule 120(B). Specifically, it failed to determine whether new counsel would be entering an appearance, new counsel would be appointed to represent Appellant, or Appellant would be proceeding *pro se*. **See** Pa.R.Crim. 120(B)(3).

Next, in light of the trial court's plain error in failing to comply with Rule 120, it unsurprisingly also failed to analyze Appellant's eligibility for appointed counsel under Pa.R.Crim.P. 122. Rule 122 of the Pennsylvania Rules of Criminal Procedure, relating to appointment of counsel, provides:

(A) Counsel shall be appointed:

(1) in all summary cases, for all defendants who are without financial resources or who are otherwise unable to employ counsel when there is a likelihood that imprisonment will be imposed;

(2) in all court cases, prior to the preliminary hearing to all defendants **who are without financial resources *or who are otherwise unable to employ counsel***;

(3) ***in all cases, by the court, on its own motion, when the interests of justice require it***.

(B) When counsel is appointed,

(1) the judge shall enter an order indicating the name, address, and phone number of the appointed counsel, and the order shall be served on the defendant, the appointed counsel, the previous attorney of record, if any, and the attorney for the Commonwealth pursuant to Rule 114 (Orders and Court Notices: Filing; Service; and Docket Entries); and

(2) the appointment shall be effective until final judgment, including any proceedings upon direct appeal.

Pa.R.Crim.P. 122(A), (B) (emphasis added). The Comment accompanying Rule 122 states that paragraph "(A)(3) retains in the issuing authority or judge

- 11 -

the power to appoint counsel **regardless of indigency** or other factors when, in the issuing authority's or the judge's opinion, the interests of justice require it." **Id.**, *cmt.* (emphasis added).

If in determining the status of counsel under Rule 120(B), the trial court finds a defendant is without sufficient financial resources to hire one, the court must appoint counsel. To the extent the trial court assessed Appellant's right to appointed counsel based principally upon the singular representation that Appellant was earning a living wage, the trial court erred. The test under Rule 122(A)(2) is not whether a defendant earns a living wage, but rather, whether he or she is without financial resources or is otherwise unable to employ counsel. While certainly consideration of a person's income is a weighty factor, the test under Rule 122(A)(2) is more encompassing than the single criteria of a person's wages. Instantly, the trial court failed to conduct any hearings for purposes of creating a record on Appellant's eligibility for appointed counsel under the criteria of Rule 122(A)(2).

Moreover, where a defendant is entitled to counsel, a colloquy is required to ensure that any waiver of the right or entitlement is voluntary, knowing and intelligent. **See** Pa.R.Crim.P. 121. Here, at no point prior to or during trial did the trial court conduct an on-the-record colloquy under Rule 121 to determine whether Appellant knowingly, voluntarily or intelligently waived his right to counsel or otherwise was prepared to proceed *pro se*. This too was in error. **See Commonwealth v. Neal**, 563 A.2d 1236, 1243 (Pa. Super. 1989) (holding trial court denied defendant his constitutional right to

counsel by dismissing public defender and forcing defendant to proceed *pro se*; defendant "was literally forced by the court to represent himself without being apprised of the consequences and pitfalls thereof"), ***appeal denied***, 575 A.2d 564 (1990); ***Brown***, 476 A.2d at 388 (holding defendant did not waive right to counsel where he was unable to afford attorney and court did not conduct "penetrating and comprehensive examination" of all circumstances pertaining to any waiver of right to counsel). Had the court done so, it would have learned what was already obvious. Appellant was not knowingly, voluntarily or intelligently waiving his right to counsel, as evidenced by his consistent and repeated protestations to the court.

Finally and most importantly, it bears repeating that the trial court did not hold any hearings to inquire into Appellant's financial situation, *i.e.*, to determine the nature of Appellant's employment, his income and liabilities, or whether he had the financial means to afford counsel. Among other things, Appellant attributed his inability to hire counsel to the curtailment of employment due to an injury, the inability to save sufficient funds to retain counsel, and as important, his child support obligations. The trial court failed to consider these and other reasons in denying appointed counsel. Even though Rule 121(b)(3) does not contain an express requirement that a trial court hold a hearing prior to permitting counsel to withdraw from a case, we find that one was warranted where, as here, an objection was lodged to a withdrawal motion and factual issues exist as to Appellant's ability to afford counsel. On this point, we find ***Brown*** instructive because of its proffered

guidance for conducting a comprehensive inquiry into a defendant's financial situation.

In **Brown**, the public defender found the appellant ineligible for representation by appointed counsel. The appellant appeared twice before the trial court prior to trial to explain that he could not afford the services of private counsel. In response, the public defender noted, *inter alia*, that the appellant worked at a club, earning $100.00 a week, and owned a 1970 Cadillac. **See Brown**, 476 A.2d at 383-84. This Court, however, concluded that the trial court failed to conduct an extensive on-the-record examination of the appellant's financial position. We particularly observed that the trial court did not inquire sufficiently into the appellant's liabilities.[10] **Id.** at 387. In support, we quoted with approval the following:

> This Court in passing on applications to proceed in forma pauperis looks not only to what the applicant's income and/or cash position is but what his periodic liabilities are. Thus a person with an income of $600 a month has been allowed to proceed in forma pauperis where his present obligations consume his entire income. The mere fact that one has money in the bank is therefore not enough to make frivolous his claim of indigency for purposes of in forma pauperis. In addition to considering the defendant's liabilities, the court should consider the cost of representation for the crime charged.

**Id.** at 386 (quoting **United States v. Kahan**, 415 U.S. 239, 244-45 (1974) (Douglas, J., concurring). This case is far more egregious than **Brown** where

---

[10] We observed that trial court did not use the now-rescinded Pa.R.Crim.P. 317 "Application Form for the Assignment of Counsel," which we characterized as "imperfect," "incomplete" and a non-exclusive "means of determining a defendant's eligibility" for appointed counsel. **Brown**, 476 A.2d at 386-87.

the trial court in fact conducted evidentiary hearings, but fell short in its examination. The trial court here conducted no hearings on Appellant's ability to obtain counsel. Thus, at a minimum, and consistent with **Brown**, a hearing here was necessary so that the trial court could "determine," under Rule 121(b)(3), Appellant's representation status and his ability to retain counsel, to ensure Appellant's constitutional right to counsel was protected. When a defendant claims an inability to afford counsel, the right to counsel demands that the trial court conduct a thorough examination of a defendant's financial wherewithal.

Instantly, after the PD's Office was excused from this case without the required status determination of counsel for Appellant, Appellant repeatedly asked the court for appointment of counsel, claiming that he lacked the resources to hire private counsel.[11] The trial court, however, denied all requests without a hearing. The court erred. Given the nature of the requests and their constitutional underpinnings, the trial court should not have summarily disposed of the requests upon the assumption—made by the PD's Office and trial court—that Appellant may no longer be indigent because of his employment status. Rather, Rule 122 requires that the court appoint counsel for all defendants who "*are without financial resources or who are otherwise unable to employ counsel*." As discussed, this standard is not limited to **indigency**, but also admits consideration of other factors affecting

_____

[11] Appellant's *pro se* communications with the trial court certainly suggest financial constraints that prevented him from retaining counsel.

a defendant's ability to afford counsel. Similarly, Section 9960.6(a) of the Act is not so limited and requires that a public defender furnish legal services to any person "who, **for lack of sufficient funds**, is unable to obtain legal services."[12] 16 P.S. § 9960.6(a) (emphasis added).[13] As the record, detailed above, reveals, the trial court ignored Appellant's repeated requests for appointed counsel and the stated necessity for the requests. In particular, we are troubled by the trial court's lack of inquiry into how Appellant's short term of employment, his physical injury, and his existing child support obligations may have affected his ability to retain counsel. Put differently, because of the trial court's failure to inquire into Appellant's financial position, the record is bereft of any evidence of (1) the nature of Appellant's employment, (2) his monthly income, (3) his outstanding liabilities, and (4) other reasons that could have affected his ability to secure counsel.

---

[12] "While the Act does not specifically quantify what constitutes sufficient funds, its language makes clear that sufficient funds for any given individual are those that enable that individual to hire private counsel for his or her defense." **Dauphin Cty. Pub. Def.'s Office v. Court of Common Pleas of Dauphin Cty.**, 849 A.2d 1145, 1149 (Pa. 2004) (some quotation marks omitted)

[13] We do not mean to suggest herein that all reasons given for lack of funds are sufficient to require appointment of counsel. Rather, we leave the determination as to available resources to retain counsel to our trial courts, which must review a defendant's sources of income, liabilities, whether short- or long-term, and other obligations to determine eligibility for public defender assistance. **See Brown**, 476 A.2d at 387. We, however, note that the Act "requires the Defender—not the private bar—to be responsible for furnishing legal counsel to an accused" who lacks the financial means to obtain counsel. **Id.** at 388 (citation omitted).

In sum, based upon our review of the record, we find that Appellant's constitutional right to counsel was violated numerous times at some of the most critical stages of this criminal proceeding—trial and sentencing—because the trial court failed to determine on the record whether Appellant was entitled to appointed counsel. Given the trial court's numerous failures to protect Appellant's Sixth Amendment right to counsel, Appellant was compelled to appear *pro se* at trial, where, as the trial transcript reveals, Appellant remained reluctantly silent. Accordingly, we vacate Appellant's judgment of sentence and remand this matter, consistent with this Opinion, for a new trial where the trial court shall first take all necessary and required steps to ensure that Appellant's right to counsel is protected. Should the trial court determine Appellant is not entitled to appointed counsel, it shall state so on the record with appropriate findings of fact supported by an evidentiary record.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2020